**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
In re:                                                          :
                                                                : Chapter 11
CALPINE CORPORATION, et al.,                                    : Case No. 05-60200 (BRL)
                                                                :
                        Debtors.                                :
---------------------------------------------------------------x
HSBC BANK USA, N.A., AS SUCCESSOR                               :
INDENTURE TRUSTEE FOR                                           :
THE 6% CONTINGENT CONVERTIBLE NOTES                             :
DUE 2014 AND THE 4.75% CONTINGENT                               :
CONVERTIBLE NOTES DUE 2023,                                     : Civil Action No. 07 CV 7832 (JGK)
                                                                :
                                                                : **ORAL ARGUMENT REQUESTED**
                                                                :
                        Appellant,                              :
                                                                :
            -against-                                           :
                                                                :
CALPINE CORPORATION AND ITS                                     :
AFFILIATED DEBTORS AND DEBTORS                                  :
IN POSSESSION, OFFICIAL COMMITTEE                               :
OF UNSECURED CREDITORS OF                                       :
CALPINE CORPORATION, OFFICIAL                                   :
COMMITTEE OF EQUITY SECURITY                                    :
HOLDERS,                                                        :
                                                                :
                        Appellees.                              :
---------------------------------------------------------------x


**OPENING BRIEF OF APPELLANT HSBC BANK USA, N.A.,**
**AS SUCCESSOR INDENTURE TRUSTEE FOR**
**THE 4.75% AND 6.00% CONTINGENT CONVERTIBLE NOTES**

HSBC Bank USA, N.A., ("HSBC"), as successor indenture trustee on behalf of the holders of the 6% Contingent Convertible Notes due 2014 (the "6% Convertible Notes") issued under the Indenture, dated as of August 10, 2000 (the "Original Indenture"), between Calpine Corporation ("Calpine" and together with its affiliated debtors and debtors-in-possession, the "Debtors"), as issuer, and Wilmington Trust Company, as predecessor indenture trustee, as supplemented by the Second Supplemental Indenture, dated as of September 30, 2004 (the "Supplemental Indenture," together with the Original Indenture, the "6% Indenture") and as successor indenture trustee on behalf of the holders (the "4.75% Convertible Noteholders") of the 4.75% Contingent Convertible Notes due 2023 (the "4.75% Convertible Notes") issued under the Amended and Restated Indenture, dated as of March 12, 2004 (the "4.75% Indenture," together with the Original Indenture and the 6% Indenture, the "Indentures") submits, by and through its undersigned counsel, this Opening Brief in support of the Consolidated Appeal (the "Appeal") from the Order Granting Debtors' Limited Objection to Convertible Noteholder Claim Nos. 2404, 2821, 2823, 6247, 6249, 6280, 6299 and 6300 (the "Order") entered by the United States Bankruptcy Court for the Southern District of New York (Hon. Burton R. Lifland) (the "Bankruptcy Court") on August 10, 2007 (App. 2.)[1]  This Opening Brief addresses the overbreadth of the Order which improperly dismissed the 4.75% and 6.00% Convertible Noteholders' potential claims to other types of unliquidated breach of contract damages resulting from the prepayment of their Notes as well as injected confusion as to certain of HSBC's claims for fees and

---

[1]   Hereinafter, "App. __" refers to the Record Appendix To Opening Brief Of Appellant Holders Of 6% Convertible Notes.

expenses which the Debtors are obligated to pay pursuant to the Indentures.  Such claims were not before the Court or litigated by the parties and their inclusion in the Order is clear error.  HSBC joins in the arguments advanced in the Opening Brief filed by Aristeia Capital, L.L.C., Aurelius Capital Management, L.P., Drawbridge Special Opportunities Advisors LLC, Ore Hill Hub Fund Ltd., Nisswa Master Fund Ltd., Pines Edge Value Investors Ltd., Pines Edge Value Investors L.P., Silver Sands Fund LLC, Stark Master Fund Ltd. and 3V Capital Management, LLC (collectively, the "6% Convertible Noteholders," together with the 4.75% Convertible Noteholders, the "Convertible Noteholders") which explains why the Order should be reversed in its entirety.  Accordingly, HSBC will not repeat those arguments here.

## JURISDICTION

This Court has jurisdiction over this appeal from an order disallowing a claim pursuant to 28 U.S.C. § 158(a)(1).  *See, e.g.*, *LTV Aerospace & Def. Co. v. Iles (In re Chateaugay Corp.)*, 930 F.2d 245, 246-47 (2d Cir. 1991).

## ISSUES PRESENTED

1. Did the Bankruptcy Court err as a matter of law in holding that the HSBC's timely-filed proofs of claim for claims under the Indentures and the 4.75% and 6% Convertible Notes, which expressly included (without limitation) all unliquidated damages under the Indentures, did not include claims for breach of the conversion right under the Indentures?

As set forth in the 6% Convertible Noteholders' Opening Brief at A, the Bankruptcy Court did so err.

- 3 -

2.Did the Bankruptcy Court err as a matter of law in determining that supplementation of the Proofs of Claim, which clarified that the claims for unliquidated damages under the Indentures asserted therein included Conversion Right Claims, constituted an amendment that did not "relate back" to the Original Proofs of Claim and was therefore time-barred?

As set forth in the 6% Convertible Noteholders' Opening Brief at B, the Bankruptcy Court did so err.

3.Did the Bankruptcy Court abuse its discretion by refusing to permit an amendment to the Original Proofs of Claim to assert the Conversion Right Claims (if such an amendment were even necessary) on equitable grounds?

As set forth in the 6% Convertible Noteholders' Opening Brief at B, the Bankruptcy Court did so abuse its discretion.

4.Did the Bankruptcy Court err as a matter of law in holding that the Debtors will have no liability if their plan of reorganization eliminates the conversion right provided under the Indenture (the "Conversion Right")?

As set forth in the 6% Convertible Noteholders' Opening Brief at C, the Bankruptcy Court did so err.

5.Did the Bankruptcy Court err as a matter of law in holding that the Conversion Right Claims would be subject to mandatory subordination to the level of equity under 11 U.S.C. § 510(b)?

As set forth in the 6% Convertible Noteholders' Opening Brief at D, the Bankruptcy Court did so err.

6.      Did the Bankruptcy Court err as a matter of law in disallowing claims under the Indentures, other than those based on the Conversion Right, when the only claims addressed in the Debtors' objection were Conversion Right Claims, and the Bankruptcy Court made no findings regarding the basis for such broad disallowance?

As set forth in the 6% Convertible Noteholders' Opening Brief at E and in Section II of the Argument hereafter, the Bankruptcy Court did so err.

## **PRELIMINARY STATEMENT**

The Debtors filed a Limited Objection to the Convertible Noteholders' claims (Nos. 2404, 2821, 2823, 6247, 6249, 6280, 6299 and 6300) (the "Limited Objection") (App. 11.)  The Limited Objection was – as its name suggests – limited.  The Debtors only objected to the Convertible Noteholders' claims for damages based on the Debtors' breach of the conversion right contained in the various indentures (the "Conversion Right")[2].  In turn, the Convertible Noteholders responded to the Limited Objection by individually submitting briefs which addressed solely their claims for breach of the Conversion Right (the "Conversion Right Claims").  (App. 12, 13, 14, and 16.)  At the hearing on August 8, 2007, all the parties addressed the Conversion Right Claims and nothing else.  (App. 10, pp. 45-93) [Docket No. 5599]  After oral argument, the Bankruptcy Court read its decision into the record granting the Debtors' Limited Objection to the Conversion Right claims.  (App. 10, pp. 93-102) [Docket No. 5599]  Nevertheless, the Order entered by the Bankruptcy Court, as submitted by the Debtors, went well beyond the Debtors' Limited Objection and foreclosed not only the Conversion Right claims, but any and all possible unliquidated breach of contract claims as well as

---

[2] The Debtors also objected to another series of notes, but that series has matured and is therefore not at issue.

- 5 -

arguably limiting fees and expenses the Debtors are obligated to pay to HSBC pursuant to the Indentures.

The Convertible Noteholders and HSBC objected to the form of Order which the Bankruptcy Court eventually entered.  In fact, the Convertible Noteholders and HSBC submitted their own proposed order (the "Noteholders' Proposed Order") which properly addressed only the issues raised in the Debtors' Limited Objection.  (App. 29.) The Bankruptcy Court should have entered the Noteholders' Proposed Order which stated: "Claim numbers 2404, 2821, 2823, 6247, 6249, 6280, 6299 and 6300 are disallowed solely to the extent that such claims request amounts for breach of conversion rights."  (App. 29)  Instead, the Bankruptcy Court entered the Order proposed by the Debtors (App. 28) which provided that the Noteholders' claims would be "determined as the amount of the outstanding principal, plus accrued interest at a rate to be determined by the Court at the end of the Chapter 11 Cases and reasonable prepetition indenture trustee fees as provided under the Indentures (collectively, the "Repayment Amounts"); *provided, however,* that nothing herein shall conflict with any treatment of indenture trustee fees under a plan of reorganization for the Debtors.  For the purposes of clarity, the Repayment Amounts shall not include any actual or potential claims, premiums or penalties related to any contract defaults or damages."  (App. 2.)

## RELEVANT FACTUAL BACKGROUND

### A. The Bankruptcy Cases

On December 20, 2005 (the "Petition Date"), Calpine and certain of its affiliates filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the

"Chapter 11 Cases") in the Bankruptcy Court.[3] On June 20, 2007, the Debtors filed their Disclosure Statement for Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code (App. 9) [Docket No. 5016] and the Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code (App. 8) [Docket No. 5015]. On August 27, 2007, the Debtors filed their Amended Joint Plan of Reorganization [Docket No. 5698] and Amended Disclosure Statement [Docket No. 5702].

By this Court's Order Establishing A Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof (App. 3) [Docket No. 1348], August 1, 2006 was established as the deadline to file proofs of claim in the Chapter 11 Cases on account of claims arising prior to the Petition Date (the "Bar Date").

HSBC submitted Proof of Claim No. 2821 (the "6.00% Proof of Claim"), dated July 26, 2006, asserting claims on account of the 6.00% Notes (App. 1) and Proof of Claim No. 2823 (the "4.75% Proof of Claim," together with the 6.00% Proof of Claim, the "Proofs of Claim"), dated July 26, 2006, asserting claims on account of the 4.75% Notes (HSBC App. 1)[4] for (a) principal outstanding as of the Petition Date, (b) accrued unpaid interest to the Petition Date, (c) post-petition interest, (d) compound interest, (e) HSBC's fees and expenses as indenture trustee, and (f) unliquidated amounts for the Contingent Convertible Notes including "liquidated damages" and "compensatory, secondary, and/or punitive damages." The Indentures were attached to the original

---

[3] The Chapter 11 Cases are jointly administered under Case No. 05-60200 (BRL) (Bankr. S.D.N.Y.).

[4] Hereinafter, "HSBC App. __" refers to the Record Appendix To Opening Brief Of Appellant HSBC BANK USA, N.A., As Successor Indenture Trustee For The 4.75% And 6.00% Contingent Convertible Notes.

Proofs of Claim. The Conversion Right was set forth at Article 10 of the 6% Indenture and the 4.75% Indenture. These original Proofs of Claim included an "Inquiry Notice" provision incorporating the provisions of the Notes and the Indenture into the original Proofs of Claim and advising all interested parties to examine the provisions of the Notes and the Indentures. These claims also included an explicit "Reservation of Rights" in which HSBC reserved "the right to amend or supplement [the] claim[s] at any time and in any respect."

On January 30, 2007, the Bankruptcy Court entered a Stipulation and Order Resolving Claim Nos. 2820, 2821, 2822, 2823, 2824, and 2825 (the "Stipulation") (App. 4) [Docket No. 3501] between the Debtors and HSBC which provides that Claim Nos. 2820, 2821, 2822, 2823, 2824, and 2825 are deemed allowed claims in certain specified amounts of outstanding principal and accrued unpaid interest. The Debtors and HSBC also stipulated that the "Debtors and the Indenture Trustee shall resolve the unliquidated claims asserted in claim numbers 2820, 2821, 2822, 2823, 2824, and 2825 pursuant to the plan of reorganization confirmed in these Chapter 11 Cases, or, in the absence of such a plan of reorganization, through the claims reconciliation process." (Stipulation and Order, at ¶ 9.)

HSBC submitted a Supplement to Proof of Claim (the "6.00% Original Supplement") to the 6.00% Original Proof of Claim, dated March 23, 2007, and recorded as claim number 6247. (App. 5) [Docket No. 4127]. HSBC also submitted a Supplement to Proof of Claim (the "4.75% Original Supplement," together with the 6.00% Original Supplement, the "Original Supplements") to the 4.75% Original Proof of Claim, dated March 28, 2007, and recorded as claim number 6249. (HSBC App. 2) [Docket No.

4162]. The Original Supplements amplified the Noteholders' "claims in an unliquidated amount, for among other things, 'any and all other amounts due or to become due under the Indenture and the [Notes]'." The Original Supplements clarified that the Proofs of Claim encompassed any and all claims on account of the Noteholders' Conversion Rights.

At the request of the Debtors, HSBC submitted an Amended Supplement (the "6.00% Supplement") to the 6.00% Proof of Claim, dated May 22, 2007, and recorded as claim number 6299. (App. 6) [Docket No. 4679]. HSBC submitted an Amended Supplement (the "4.75% Supplement") to the 4.75% Proof of Claim, dated May 21, 2007, and recorded as claim number 6300. (HSBC App. 3) [Docket No. 4680].

### B. The Debtors' Limited Objection

On July 6, 2007, the Debtors filed their Limited Objection seeking to deny the Convertible Noteholders' Conversion Right Claims. (App. 12) [Docket No. 5206]. The Debtors acknowledged in their Limited Objection that "the original proofs of claim filed by the Convertible Noteholders (prior to the August 1, 2006 bar date) properly sought only outstanding principal, accrued interest, and 'other unliquidated amounts.'" (App. 11, at 2.) The Debtors specifically argued against the "New Claims" which the Debtors defined as "damages for any 'breach' of the Conversion Rights." (App. 11, at 12.) Thus, the only claims which the Debtors objected to were the "New Claims" defined in their Limited Objection as claims for damages for any breach of the Conversion Rights.

The 6% Convertible Noteholders, the 7.75% Convertible Noteholders, and Manufacturers Traders Trust Company ("MT&T"), as indenture trustee for the 7.75%

Contingent Convertible Notes, respectively filed responses to the Debtor's Limited Objection on July 27, 2007 and HSBC filed its response on July 30, 2007 (collectively, the "Responses"). (App. 12, 13, 14, and 16) [Docket Nos. 5427, 5428, 5429, 5449]. HSBC requested that the Bankruptcy Court reject the Limited Objection insofar as it "seeks to disallow HSBC's claims on behalf of the Convertible Noteholders to recover the full benefit of their bargains in the form of breach of contract damages for early payments depriving the Noteholders of ever exercising their conversion rights." (HSBC Response at ¶ 3.) *See also* 6% Convertible Noteholders Response, at ¶ 7 ("[T]he Debtors have not sought a determination of the value or priority of any allowed claim. Rather, they contest any liability for breach of the Conversion Right."). (App. 12) [Docket No. 5427].

The Debtors filed their Omnibus Reply in Support of the Limited Objection (the "Omnibus Reply") on August 6, 2007 in which they again argued specifically against the Conversion Right or "New Claims." (App. 18) [Docket No. 5540].

On August 8, 2007, the Bankruptcy Court heard oral argument on the Limited Objection. (App. 10) [Docket No. 5599]. Oral argument on the Debtors' Limited Objection – like the Limited Objection itself – was limited to the Conversion Right claims. Subsequent to hearing oral argument from the parties, the Bankruptcy Court issued its ruling from the bench, granting the Limited Objection and directing the Debtors to "[s]ettle an order consistent with this decision." (App. 10, pp. 103) [Docket No. 5599].

On August 10, 2007, the Debtors submitted a proposed order (the "Debtors' Proposed Order") for the Court to enter which went well beyond the issues briefed and argued. In addition to addressing HSBC's indenture trustee fees which were not the subject of the Debtors' Limited Objection, the Debtors' Proposed Order sought to limit the Convertible Noteholders' claims solely to principal and accrued interest thereby denying all other possible unliquidated claims even though they were not the subject of the Debtors' Limited Objection. (App. 28.)

The Convertible Noteholders and HSBC submitted the Convertible Noteholders' proposed order (the "Noteholders' Proposed Order") at the same time. The Noteholders' Proposed Order specifically addressed the Conversion Right briefed by the parties and addressed in oral argument and ordered that "Claim numbers 2404, 2821, 2823, 6247, 6249, 6280, 6299 and 6300 are disallowed solely to the extent that such claims request amounts for breach of conversion rights." (App. 29.) By letter dated August 10, 2007, counsel for the Convertible Noteholders requested a conference with the Bankruptcy Court to address the issues raised by the competing forms of orders. (App. 29.)

### C. The Order and Appeal

On August 10, 2007, the Bankruptcy Court entered the Debtors' Proposed Order (the "Order"), without any comment or conference. In the Order, the Court not only denied the Convertible Noteholders' Conversion Right but also went beyond the relief sought by the Debtors and limited the value of the claims asserted under the Indentures as follows:

> determined as the amount of the outstanding principal, plus
> accrued interest at a rate to be determined by the Court at

> the end of the Chapter 11 Cases and reasonable prepetition indenture trustee fees as provided under the Indentures (collectively, the "Repayment Amounts"); *provided, however,* that nothing herein shall conflict with any treatment of indenture trustee fees under a plan of reorganization for the Debtors. For the purposes of clarity, the Repayment Amounts shall not include any actual or potential claims, premiums or penalties related to any contract defaults or damages. (App. 2, at 2.)

This appeal followed.

## ARGUMENT

**I.  JOINDER**

HSBC, as indenture trustee for the 4.75% Notes and the 6% Notes, respectfully submits that the Order should be reversed. To that end, HSBC, as indenture trustee for the 4.75% Notes and the 6% Notes, hereby joins in the Opening Brief of the 6% Convertible Noteholders and adopts and incorporates the arguments advanced therein.

**II.  THE COURT'S ORDER GRANTING DEBTORS' LIMITED OBJECTION IMPROPERLY ADJUDICATES CLAIMS WHICH WERE NOT BEFORE IT**

The Order is improper because it adjudicates issues which were not before the Bankruptcy Court at the time of briefing or during the hearing. The Order excludes claims that the Debtors did not expressly object to in the Limited Objection. As evidenced by its title, the Debtors' objection was a limited one, concerned specifically with the Conversion Right of the Convertible Noteholders. It did not object to any other contract claim nor did it address the issue of the Indenture Trustee's fees and expenses.

It is axiomatic that a Court is limited in its ability to grant relief to that relief which is sought by the parties and on which the parties have had the opportunity to be heard. *See National Marine Engineers Beneficial Assoc. v. Commerce Tankers Corp.*,

75 C 841, 1975 WL 969 (E.D.N.Y. Sept. 24, 1975) (holding that if "relief goes beyond the scope of the motion" then it "would not be appropriate").  The Bankruptcy Court may not limit the claims which may be asserted by the Convertible Noteholders where none of the parties have requested such relief and where, in fact, the parties have, in the Stipulation and Order (App. 4), provided for the express preservation of such claims.  Such an overbroad order should be reversed as a matter of law.

The Debtors specifically objected to the availability of the Conversion Right, arguing that these claims were time barred and unsupported by legal precedent.  In the Responses, each of the Convertible Noteholders discussed the Debtors' characterization of the Conversion Right and provided arguments tailored specifically to the Conversion Right claim objected to by the Debtor without regard to other claims which were not at issue.

In its Order, the Bankruptcy Court itself notes that the Debtors in their Limited Objection only sought to object to the New Claims by the Convertible Noteholders "seeking entry of an Order disallowing the *New Claims*" which the Debtors had defined in their Limited Objection as being limited to the Conversion Right.  (App. 2, at 1 (emphasis added).)

However, the Bankruptcy Court, at the Debtors' behest, went on to impermissibly set the value of the claims in its Order as:

> determined as the amount of the outstanding principal, plus accrued interest at a rate to be determined by the Court at the end of the Chapter 11 Cases and reasonable prepetition indenture trustee fees as provided under the Indentures (collectively, the "Repayment Amounts"); *provided, however,* that nothing herein shall conflict with any treatment of indenture trustee fees under a plan of reorganization for the Debtors.  For the purposes of clarity,

>the Repayment Amounts shall not include any actual or potential claims, premiums or penalties related to any contract defaults or damages.

In doing so, the Court disallowed actual or potential breach of contract claims even though those claims had never been objected to by the Debtors, as well as created confusion regarding repayment of the fees and expenses of the indenture trustees, which is another portion of the Proofs of Claim that had never been objected to by the Debtors. This constitutes clear error.

The Convertible Noteholders may well assert unliquidated claims for breach of contract or expectation damages arising from the prepayment of their notes. Indeed, the Debtors have repeatedly objected to such claims, known as make-whole claims, during the course of this bankruptcy but they have never filed such an objection to the Contingent Convertible Notes.

The Debtors' first objection to such claims was denied by the Bankruptcy Court in its CalGen Decision in which expectation damages for prepayment of secured notes held by the CalGen Secured Lenders were allowed as unsecured claims. *In re Calpine Corp.*, Case No. 05-60200 (BRL), 2007 Bankr. LEXIS 645 (Bankr. S.D.N.Y. March 5, 2007), appeal pending. In June 2007, the Debtors objected to claims for breach of contract damages for make-whole amounts made by the Second Lienholders and the holders of several series of unsecured notes. The settlement of the Second Lienholders make-whole claims was approved at a hearing held the same day that the Limited Objection to the Conversion Right was heard and decided. (App. 10) [Docket No. 5599.] The remaining claim is still pending. Significantly, the Debtors have not filed an

objection to any Convertible Noteholders' claims for such expectation or make-whole damages, nor was this issue before the Bankruptcy Court.

The 4.75% and 6.00% Noteholders' assertion of claims for expectation damages in the nature of make-whole damages would be based on the Bankruptcy Court's CalGen Decision. There, the CalGen Secured Lenders sought to recover damages for the Debtors' prepayment of three series of debt in violation of no-call provisions which provided that the debt could not be prepaid prior to a certain date. Two of the series had make-whole provisions, one did not. The Debtors argued that the CalGen Secured Lenders were not entitled to any recovery because the no-call provisions were unenforceable due to the bankruptcy.

The Court disagreed, holding that the Debtors' "preclusive argument for a total foreclosure of any damage recovery is incorrect." *Id*. at *17. The Court recognized that the "CalGen Secured Lenders' expectation of an uninterrupted payment stream has been dashed giving rise to damages." *Id*.; *see also Harsco Corp v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996). The Court concluded that "while the agreements do not provide a premium or liquidated damages for repayment during the period the Debtors propose, the CalGen Secured Lenders still have an unsecured claim for damages for the Debtors' breach of the agreements." *Id*. at *18.

Here, the 4.75% and 6.00% Noteholders may have a claim for damages on account of the Debtors' early repayment of the debt. Under the terms of the 4.75% Indenture, the 4.75% Notes could not be redeemed before November 22, 2009 (§ 3.07). Under the CalGen Decision, the 4.75% Noteholders could argue they have a claim for damages as a result of any prepayment before that date. The 6.00% Notes Indenture

provides that the Debtors may redeem the Notes if they are offered for conversion (§ 3.02). There are no other redemption provisions. Thus, the 6.00% Noteholders may claim that they have an unliquidated breach of contract claim for damages caused by any prepayment not in connection with a conversion.

This Court should not address the merits of such claims on this appeal. The point is that the Convertible Noteholders' claims for such damages have not been objected to by the Debtors, let alone litigated in the Bankruptcy Court. Thus, the Order entered by the Bankruptcy Court impermissibly denies claims which were not objected to by the Debtors, were not litigated by the parties, and about which the Bankruptcy Court made no findings.

In addition to adjudicating claims of the Convertible Noteholders' which were not litigated, the Court also improperly addressed certain claims of the indenture trustees, namely their claims for fees and expenses which the Debtors are obligated to pay pursuant to the Indentures. Once again, these claims were not at issue in the Debtors' Limited Objection.

When it signed the Order stating that the Repayment Amounts were determined to be principal, accrued interest, and "reasonable prepetition indenture trustee fees as provided under the Indentures" (App. 2) [Docket No. 5595] the Bankruptcy Court put into issue what constitutes prepetition indenture trustee fees and expenses.[5] Suffice it to say that the Debtors and HSBC have differing interpretations of what constitutes prepetition indenture trustee fees under the Order. But the point is the Debtors had not objected to HSBC's fees and expenses in the Limited Objection (nor did they object to

---

[5] Subsequent to the entry of the Order, the Debtors confirmed to HSBC that they interpret the Order to include indenture trustee expenses as part of "fees."

- 16 -

the fees and expenses of the other indenture trustee) and without an objection, briefing, or an argument or finding regarding such fees and expenses, the Court entered its Order.  As stated above, because the Order impermissibly set the value of the claims instead of merely disallowing the Convertible Noteholders' claims for breach of conversion rights, the Order is overly broad and should be reversed as a matter of law.

       Thus, should this Court find that the Bankruptcy Court was correct in granting the Debtors' Limited Objection to the convertible claim, the Order remains impermissibly broad because it goes beyond the scope of the relief sought in the Debtors' Limited Objection and the issues briefed and argued by the parties.

**CONCLUSION**

For the foregoing reasons and for the reasons set forth in the Opening Brief of the 6% Noteholders, HSBC respectfully requests that this Court reverse the Bankruptcy Court's Order in its entirety, together with such other and further relief as the Court deems just and proper.

Dated: September 7, 2007
New York, New York

Respectfully submitted,

KELLEY DRYE & WARREN LLP

By: */s/ Sarah L. Reid*
Sarah L. Reid (SR-4603)
David E. Retter (DR-4014)
Damon W. Suden (DS-8384)
Jennifer A. Christian (JC-7305)
101 Park Avenue
New York, New York 10178
Telephone: (212) 808-7800
Facsimile: (212) 808-7897

HSBC BANK USA, N.A., AS SUCCESSOR INDENTURE TRUSTEE FOR THE 6% AND 4.75% CONTINGENT CONVERTIBLE NOTEHOLDERS